## Rosengarten's Estate

Before Van Dusen, P. J., Sinkler, Klein, Bolger, Ladner, and Hunter, JJ.

*John E. Walsh, Eric A. McCouch, Henry S. Drinker* and *Joseph H. Grubb, Jr.*, for exceptants.

*Gordon A. Block,* of *Wolf, Block, Schorr & Solis-Cohen,* contra.

HUNTER, J., May 11, 1943.—The question presented by these exceptions is whether grandchildren take per stirpes or per capita under the following provision of the will:

"Upon the death of the last survivor of my said children, then I direct my said Trustees to convey, assign, transfer and pay over the principal of my said residuary estate to my grandchild or grandchildren or their issue living at that time, such issue taking the share their parent would have taken if living."

When testator made his will in 1891 there were no grandchildren. Now, at the termination of the trust, upon the death of the last survivor of testator's five children, there are 12 grandchildren, and two great-grandchildren, the children of a deceased grandchild. One grandchild is the son of Albert, one is the son of Harold, the two great-grandchildren are the children of a deceased daughter of Mitchell, and there are 10 grandchildren who are the children of Katharine E. Tyson. Testator's daughter, Alice, died without issue.

Exceptants contend that the trust estate is distributable in one-fourth shares per stirpes. The Tyson grandchildren support the adjudication which awarded to each grandchild a per capita share, eliminating from the distribution Albert H. Rosengarten, Jr., a grandchild whose father was advanced by the trustees a sum in excess of the grandchild's share.

The quoted clause of the will is free from doubt. The gift is to grandchildren as one class. All stand on one plane. They are described by their relationship to testator, and are not referred to as the children of their parents, which would be the case had testator intended more classes than one. The grandchildren are treated as individuals and not as representatives of their parents. These assurances of testator's intent become conclusive when we read the last clause of this sentence of the will whereby testator makes a substitutionary gift to the issue of grandchildren, such issue taking the share their parent would have taken if living, which shows that testator knew how to provide for representation when such was his desire.

Exceptants contend, however, that this clause of the will is in conflict with the general scheme of testator, which requires the resolution of this conflict in favor of a stirpital division among the descendants of the four children. In particular exceptants point to testator's division of the estate in item fourth, immediately upon his death, into as many shares as he had children then living, and the direction to pay the income per stirpes to the children and their descendants until the death of the last child to die. Further, they call attention to the right given to the sons in item fifth to receive absolutely 60 percent of the principal of their shares, and the direction in item sixth that the share paid to the child, children, or issue of any of the sons to whom an advancement may have been made, as provided by the fifth item of the will, shall be taken subject to such advancement, and the amount thereof deducted from such share.

We cannot agree that there is conflict between these provisions of the will. Each provision was intended by testator to have independent operation, and there is no reason why his intention cannot be carried out.

In plain and easily understood language he directed the distribution of income upon a per stirpes basis where the persons to be benefited were in three generations, children, grandchildren, and issue, and then upon the death of his last surviving child, when the beneficiaries were in two generations, grandchildren and issue, he designated grandchildren as the family unit, and provided for representation only from them.

There is nothing unusual or unnatural in a distribution per capita among grandchildren. In fact, it may be a common-sense distribution in the family situation which we have here, having regard to the common claims and necessities of living individuals who are equally related to testator.

Similar distributions were sustained in Duckett's Estate, 214 Pa. 362, Joyce's Estate, 273 Pa. 404, Roney's

Estate, 19 Dist. R. 565, Lennig's Estate, 12 D. & C. 51, and Jayne's Estate, 16 D. & C. 51. See also Bayard's Estate, 340 Pa. 488, Lenhart's Estate, 344 Pa. 358, and A. L. I. Restatement of Property, §300.

There is also the analogy of the Intestate Act of June 7, 1917, P. L. 429, secs. 7(*c*) and 19, 20 PS §§53, 132, which provide that where grandchildren or heirs are related in the same degree they shall take in equal shares: Scott's Estate, 163 Pa. 165, 169; Lenhart's Estate, supra, at p. 362. As was said by Rice, P. J., in Sipe's Estate, 30 Pa. Superior Ct. 145, 150:

"The statute of distributions governs in all cases where there is no will; and where there is one, and the testator's intention is in doubt, the statute is a safe guide: Ashburner's Est., 159 Pa. 545."

Herkness' Estate, 14 D. & C. 135, cited by exceptants, is to be distinguished by the fact that there was an explicit direction that children and issue "take per stirpes and not per capita".

Item sixth of the will is not inconsistent with a per capita distribution when it provides:

"I direct that the share which may thus be paid to the child, children or issue of any of my sons to whom an advancement may have been made as provided in the Fifth Item of this my will shall be taken subject to such advancement and the amount thereof be deducted from such share."

It was evidently the thought of testator that the children of a son would benefit, directly or indirectly, by a payment of principal to their parent, and he used this method to insure equality among the grandchildren.

We are not convinced that the word "share", used in the singular in this sentence instead of the plural, indicates that the share which may thus be paid to the child, children, or issue was the stirpital share of a son, and not the per capita share of a grandchild.

Perhaps, the use of the singular instead of the plural is a flaw in an otherwise precise will, but in our opinion the word is not sufficient to disturb testator's clear directions for a per capita distribution. The share here referred to we believe is the share of a grandchild, or remoter issue, which is fixed by the immediately preceding sentence, and not the share of a son, as had been determined by an earlier and more distant item of the will.

This is a well-drawn will, and it is our duty to interpret it as written.

As was said by Mr. Justice Stern in Hogg's Estate, 329 Pa. 163, 166:

"These contentions as to the relative merits, from a standpoint of abstract justice, of the alternative methods of distribution are not a proper subject of consideration by the court, since the judicial function is limited to the enforcement of testator's directions. If his language is clear it constitutes its own decree of distribution. The court may not speculate upon the question as to what testator might have provided in this case had he been endowed with prescience; the only inquiry is in regard to the actual provisions of his will, and the criterion of their construction is the meaning of his words."

The exceptions are dismissed and the adjudication is confirmed absolutely.

VAN DUSEN, P. J., dissenting.—Reading only that part of the sixth paragraph in which the gift of principal is made, I would agree with the majority that the grandchildren are to take per capita. But when I read the provision for the deduction of the sum advanced to any son from the *share* (in the singular) of the issue of that son, I perceive that testator is thinking stirpitally. Each son is to get an advancement of 60 percent of the amount on which he is receiving income; and if the distribution to his issue is per

stirpes there will always be enough to repay the advancement. But on a per capita distribution, the share of his issue might well be less than 60 percent of the share on which he had been receiving income; and in that case the grandchildren in that branch of the family would get no principal, though they may have been receiving income since their father's death. This has actually happened in the case of Albert. Testator could hardly have intended that the advancement of "a portion of the principal producing his share of net income, not exceeding sixty percent" to one of his sons should consume the whole patrimony of that branch of his descendants.

Ladner, J., joins in this dissent.